# Cross *versus* The Peach Bottom Railway Co.

1. An alteration in the charter of a railway company, by which the additional privilege is given to the corporation to extend its road, is not such an invasion of the contract of subscription as will relieve the subscriber to the stock from his liability to pay. Gray *v.* The Monongahela Navigation Co., 2 W. & S. 156, followed.

2. *It seems*, that the reservation to the legislature, in the Act of February 19th 1849, regulating railroad companies, to alter or amend any charter granted under said act, was only intended to enable the legislature to act without the consent and against the will of the corporation ; but where the alteration is made on the suggestion of the company, the legislature has nothing to do with the case.

May 28th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *York county:* Of May Term 1879, No. 164.

Assumpsit by the Peach Bottom Railway Company against Thomas G. Cross, to recover the amount of a subscription to the stock of the company plaintiff.

The Peach Bottom Railway was incorporated by the Act of March 24th 1868, Pamph. L. 778. By the first section thereof, the company was invested with all the powers, and made subject to all the provisions of the Act of February 19th 1849, Pamph. L. 46, entitled an act regulating railroad companies. By the 20th section of the latter act, the legislature reserves the power to resume, alter or amend any charter granted under said act.

By the Act of 7th of April 1873, Pamph. L. 545, a supplement was passed, enacting that the second section of the act of incorporation of the Peach Bottom Railway Company, approved the 4th day of March 1868, shall be and is so far altered and supplied,

[Cross *v.* Peach Bottom Railway Co.]

as to authorize and empower said company to lay out, construct and operate the main line of the railroad to the town of Berlin, in the county of Adams.

Before the passage of this latter act, the defendant subscribed for a number of shares of the stock of the plaintiff company; which enactment he contended, released him from the payment of his subscription. The railway company since this amendment to its charter, never took any steps to extend the road to Berlin.

The case came before the court below, on exceptions to the report of a referee, James W. Latimer, Esq., who decided that this amendment of the plaintiff's charter, released defendant from the obligation of paying his subscription.

The court, Fisher, P. J., in reviewing these exceptions, inter alia, said : " We agree with the auditor in the view he has taken of the case, except as to the enlargement of the powers of the corporation by the Act of April 7th 1873. * * *

" It may, perhaps, be proper here to state, that the Peach Bottom Railway Company have never, since the amendment to its charter, taken any steps to extend the main line of the railroad to Berlin, in Adams county, and declare that they never intended to do so. In the case of Commonwealth *v.* Fayette Railroad Co., 5 P. F. Smith 452, it was decided that a railroad company, incorporated subject to the provisions of the Act of 1849, with a proviso that it should not be taxed until its dividends amount to six per centum per annum, although subsequently a general law declared that all incorporations were to be subject to a tax of one per centum of dividends thereafter declared, was taxable under the latter act on a dividend less than six per centum per annum, on the principle that the reservation in the Act of 1849, became a constituent part of the contract of incorporation.

" In the case of Union Improvement Co. *v.* Commonwealth, 19 P. F. Smith 140, the same doctrine was held, and the case of Iron City Bank *v.* Pittsburgh, 1 Wright 340, was approved, in which was decided in substance, the same doctrine as in the above cited case.

" In New York there exists a statute similar to our Act of 1849. Under this act it was held in the case of the Buffalo and New York Railroad Company *v.* Dudley, 4 Kernan 354, ' That the amendment of a charter changing the name of a corporation, and authorizing the extension of the road from Attica to Buffalo, was within the power, as reserved by the legislature in the charter of incorporation, to alter or repeal the act.'

" We are of the opinion that these cases take a proper view of the subject, and that judgment ought to be rendered for the plaintiff."

The court then entered judgment for plaintiff for $470.30 with costs. The defendant then took this writ, and, inter alia, assigned for error the above portion of the charge, and the entry of judgment for plaintiff.

[Cross *v.* Peach Bottom Railway Co.]

*W. C. Chapman* and *Cochran & Hay*, for plaintiff in error.—
The cases cited by the court below, were all questions of the
power of the legislature to impose taxes on corporations by general
laws, notwithstanding they had special provisions that they should
only be taxed in certain contingencies. In the New York cases,
each charter expressly reserved to the legislature the right at any
time to alter, repeal or amend the act. There is no such absolute
power vested in the legislature of this state. In reserving, alter-
ing or amending our charters, it must be seen that no injustice is
done to the corporation. It has been repeatedly held in our
courts, that the *termini* named in a charter are fundamental condi-
tions of the terms of subscription, and that the super-addition of
any new enterprise discharges the subscriber: Everhart *v.* Phila-
delphia and West Chester Railroad Co., 4 Casey 339; Indiana
Turnpike Co. *v.* Philips, 2 P. & W. 184; Plank-road Co. *v.* Arndt,
7 Casey 317; Caley *v.* Phila. and Chester Railroad Co., 30 P. F.
Smith 363; Hays *v.* Commonwealth, 1 Norris 518.

*John Blackford* and *V. K. Keesey*, for defendant in error.—
The reserved right of the granting power to "resume, alter or
amend" the charter of the plaintiff below, was as much a part of
the contract to which the defendant below subscribed, as if the
very language of the Act of 1849, *supra*, had been engrafted into
the charter: Suydam *v.* Moore, 8 Barb. 358; Oliver Lee & Co.'s
Bank, 7 Sm. (N. Y.) 21; In the matter of the Reciprocity Bank,
22 Id. 9; Fitchburgh Railroad Co. *v.* Grand Junction Rail-
road Co., 4 Allen 198–205. This reserved right to amend, alter
or repeal, includes authority to withdraw powers granted to a
corporation, and to confer new powers upon it, and require the
exercise of such new powers. It is independent of the assent of
the corporation: Mayor, &c., *v.* Norwich, &c., Railroad Co., 109
Mass. 103; The City of Roxbury *v.* Boston, &c., Railroad Co., 6
Cush. 424; Mass. Statutes 1831, p. 613. Its exercise does not
impair the obligation of the contract; Commonwealth *v.* Fayette
County Railroad Co., 5 P. F. Smith 454; Union Improvement
Co. *v.* Commonwealth, 19 Id. 140; Fell *v.* McHenry, 6 Wright
41–9; Tomlinson *v.* Jessup, 15 Wall. 454; Tomlinson *v.* Branch,
Id. 460; Holyoke *v.* Lyman, Id. 500; Miller *v.* The State,
Id. 478.

The defendant subscribed to the stock subject to the contin-
gency, that additional powers might be conferred by an amend-
ment to the charter: Schenectady, &c., Plank-road Co. *v.* Thatcher,
1 Kernan 102; Buffalo and New York Railroad Co. *v.* Dudley,
14 N. Y. 336; Northern Railway Co. *v.* Miller, 10 Barb. 260.

But it is suggested by the plaintiff here, that the reserved right
of the legislature of Pennsylvania to resume, alter or amend, is
restricted by the *proviso* "that in resuming, altering or amending

[Cross *v.* Peach Bottom Railway Co.]

said charters, no injustice shall be done to the corporators." Grant this to be so, where is the injustice done to Thomas G. Cross by this amendment? Certainly to show that, was incumbent upon him: Northern Railroad Co. *v.* Miller, 10 Barb. 260; Schenectady, &c., Railroad Co. *v.* Thatcher, 1 Kernan 109.

Mr. Justice GORDON delivered the opinion of the court, June 23d 1879.

Whilst we agree with the judgment of the court below, we cannot approve of some of the reasoning which leads to that judgment. We do not think it follows that because this railway company was, in its erection, made subject to the Act of 1849, in which act the power is reserved to alter or amend any charter granted under it, that a subscriber to its stock would be held to payment, notwithstanding some material change might be made in the organization or powers of the corporation. It is not legislative power that we have to regard, but the contract of the subscriber. The legislative reservation is in the nature of a police power designed for the protection of the public welfare, and where such protection becomes necessary, the law-making power may act without consulting either the interests or will of the company, and in such case it may well be that, not only the company, but its stockholders, must submit to the legislation thus imposed upon them. Where, however, this legislation results from the motion, and for the benefit of the corporation, the case is different; for when an alteration in the charter is made on the suggestion of the company itself, the Act of 1849 has nothing to do with the case; the legislature always had such power. The reservation in the act just named, was only intended to enable the legislature to act without the consent and against the will of the corporation.

It is manifest, therefore, that in considering the case in hand, we must leave this act out of the question, for, by the finding of the referee, the supplement of 1873 was made for and accepted by the company.

It is certain, then, that if this supplement had made a material change in either of the termini of the road, or if the alteration in the charter were so extensive and radical as to superadd to the original undertaking an entirely new enterprise, the case would be governed by the rulings found in the Turnpike-road Co. *v.* Phillips, 2 P. & W. 184, and the Turnpike-road Co. *v.* Arndt, 7 Casey 317, and the plaintiff could not recover. But we cannot see that the supplement works any such change or alteration.

It confers upon the company an additional privilege, in that, it authorizes it to extend its main line to the town of Berlin, in the county of Adams, but, if we understand the case, this interferes with neither of the present termini. If, for example, the defendant was interested in one or both the terminal points now reached by

[Cross *v.* Peach Bottom Railway Co.]

the road, these points, notwithstanding the railway should hereafter be extended to Berlin, would still be reached by the road; neither of them would be affected or cut off from the line of improvement. The additional power conferred upon the company is only that of extension, and it in no way interferes with the rights of the defendant as vested in him by the contract of subscription. It follows that the governing rule is that found in Gray *v.* The Monongahela Navigation Co., 2 W. & S. 156, to wit: " An alteration in a charter of incorporation, by which additional privileges are given to it, is not such an invasion of the contract of subscription as will relieve the subscriber to its stock from his liability to pay." The language used by Chief Justice GIBSON, in the case cited, is so thoroughly applicable to the one in hand, that we have but to adopt it in order to fully dispose of the question in controversy. " In this instance then what has the legislature of Pennsylvania done? It has not pretended to take away any corporate franchise, or to impinge upon any right before granted. That is not pretended. On the contrary it has enlarged a corporate privilege. But the exercise of it, it is alleged, may plunge the company into an expense not originally contemplated. What of that? The defendant is not bound to contribute to it beyond the amount of his original subscription, and, as to that, his contract remains the same. But it is said that by taking off the limitation of the company's expenditure, the legislature has altered its power to incur responsibility for greater damages than it otherwise could have done. In that lies the fallacy. The legislature has not made it incumbent on the company to use the additional privilege granted to it, but it has left the use of it to its discretion. It may, in fact, never use it, and whether it shall do so, will depend on the volition of the defendant's corporate agents, the president and managers, by whose acts he is necessarily to be bound as his own, even in the modification of the charter for the public good, provided it does not extend to a change of the structure of the association, as was attempted in the Indiana and Ebensburg Turnpike *v.* Phillips, 2 P. & W. 184."

The applicability of all this language to the case in hand will appear in the mention of a few of the facts: The supplement of 1873 only confers the power upon the company to extend its road to Berlin; it has, however, as yet not availed itself of that power; it may never do so, but if it does the defendant is not bound to contribute to the expenses necessary to accomplish such extension. The power is a discretionary one, and if it is ever exercised it must be so exercised only at the will of the defendant's corporate agents, the president and managers of the corporation. As, however, the case stands at the present time, the defendant is asked to pay for nothing that he did not contract to pay for, that is, the building of the road as it now exists; this he agreed to do, and it is but right that he be held to his bargain.

                                        The judgment is affirmed.