## AUBURN BOLT & NUT WORKS v. D. L. SHULTZ.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 17, 1891—Decided October 5, 1891.

[To be reported.]

1. A subscriber to the capital stock of a manufacturing company, proposed to be incorporated under the act of April 29, 1874, P. L. 73, and

Statement of Facts.

its supplements, may withdraw his subscription at any time before the articles of incorporation are ready for filing in the office of the secretary of the commonwealth: Muncy Traction Engine Co. v. Green, post 269.

2. The defendant subscribed to the stock of a proposed corporation, "for the purpose of erecting a manufactory in the borough of Auburn." The company having erected its plant, not in said borough but in an adjoining township, the subscription was not enforceable, though the company's charter provided that its business was to be transacted " in said borough."

3. Where a point is presented which, assuming that a certain question of fact is before the jury for determination, prays for instruction upon that assumption, the party presenting the point cannot afterward raise the objection in the Supreme Court that there was no evidence in the case justifying the submission of the question.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 211 July Term 1890, Sup. Ct.; court below, No. 117 March Term 1888, C. P.

On January 17, 1888, the Auburn Bolt & Nut Works, a corporation, brought assumpsit against Dr. D. L. Shultz, to recover a subscription by the defendant for ten shares of the capital stock of the plaintiff company. The defendant pleaded non-assumpsit.

At the trial, on September 17, 1889, the following facts were shown:

On March 1, 1887, the defendant subscribed his name to a paper in the following form:

" We, the undersigned, obligate ourselves to pay the amount set opposite our respective names for the purpose of erecting a nut and bolt manufactory in the borough of Auburn, Pa., to be paid as the money shall be required, and to receive a certificate of stock when such money is paid."

Opposite his signature the defendant wrote as the amount of his subscription, "$500." A large number of other persons signed the subscription paper, some of them before, and some after it was signed by the defendant. On the same day, March 1st, a permanent organization of the subscribers was effected by the election of officers and a board of directors. At a subsequent meeting held March 21, 1888, of which notice was given to the subscribers by bills posted in the borough of Au-

burn, a site for the proposed bolt and nut works was selected, and it was determined to begin the erection of the buildings immediately. To this end a call was made for ten per cent of the stock subscribed. The defendant was not at that meeting, and testified that he saw none of the posted notices, and was without knowledge of the holding of the meeting.

The site selected for the works was not within the borough of Auburn, but was in West Brunswick township, about one eighth of a mile from the borough limits. The work of erection was commenced on said site on March 25, 1887. On April 5, 1887, a certificate of incorporation was signed, acknowledged and sworn to by the requisite number of the subscribers to stock, for the purpose of obtaining a charter under the act of April 29, 1874, P. L. 73, and its supplements. The certificate was promptly placed on file in the office of the secretary of the commonwealth, and on May 16, 1887, the governor approved the certificate, and letters patent were issued to the plaintiff company. In the certificate all the subscribers who had signed the subscription paper above quoted, including the defendant, were named as subscribers to the stock of the proposed corporation, but the defendant was not among the signers of the certificate. The purpose of the corporation was set forth in the certificate to be the manufacture of iron or steel, or both, or of any other metal or article of commerce from metal, wood, or both; and in both the certificate and the letters patent it was set forth that the business of the corporation was to be transacted in the borough of Auburn.

On April 7, 1887, A. K. Frederici, a member of the board of directors elected on March 1st, was sent by the secretary to see the defendant and request the payment of ten per cent of the latter's subscription. Testimony for the defendant tended to show that when Frederici, on the day named, demanded payment of the ten per cent, the defendant refused to pay, saying that he had subscribed to works to be erected in the borough of Auburn, and that the location of the works outside the borough limits absolved him from the obligation of his subscription; that the conversation then drifted to other topics, and after talking for about three quarters of an hour on other matters, Frederici said to the defendant: " Doctor, give me $50," to which the defendant replied, " Certainly; " and thereupon

Charge of Court below.

he wrote a check for $50 in favor of Frederici, and handed it to him. The defendant testified that he understood Frederici to ask for a loan of $50, and gave him the check with that understanding. Frederici testified for the plaintiff that he thought the defendant understood the request for $50 to be made in pursuance of the prior demand for the payment of ten per cent of the subscription, and gave the check as a payment on the subscription. The check was turned over to the secretary of the company by Frederici, who obtained from the secretary a receipt to the defendant for $50, as paid on account of his subscription. This receipt Frederici kept in his possession until after the commencement of the present action, when he offered it to the defendant who refused to accept it. There was some evidence for the plaintiff that the check for $50 was drawn in favor of the treasurer of the company. There was also testimony tending to show that the defendant, subsequent to April 7, 1887, promised to pay his subscription, and testimony in rebuttal of this allegation.

The testimony being closed, the court PERSHING, P. J., charged the jury in part as follows:

[The letters patent issued to this company follow the original subscription, and set forth that the business of this corporation is to be transacted in the borough of Auburn; and that is the provision of the charter itself, as well as the provision of the original contract, which was signed, in the first instance, by those who proposed to enter into this corporation. The first question raised in the case is as to the legal liability of the defendant, Dr. Shultz, inasmuch as the works were not located in the borough of Auburn, but outside. This is an undisputed fact in this case. We gave this question the best consideration we were able to during the progress of the trial. Taking into view the subscription list itself, which stipulates that the subscriptions are to a nut and bolt manufactory in the borough of Auburn, followed, as it was, by the letters patent, which created a corporation containing the same stipulation, that the business of the corporation was to be carried on in the borough of Auburn, we will instruct you, for the present at least, that the defendant would not be bound by his subscription if the works were located elsewhere. If they were located outside the borough

Charge of Court below.

of Auburn, it would be in the face of the terms of the contract; and if this were all the evidence in the case upon this question, we would affirm the first point of the defendant, namely, " That the defendant subscribed for the erection of a nut and bolt manufactory in the borough of Auburn ; and, as a portion of the subscribers changed the place for the erection of the same outside of the borough of Auburn and in the township of West Brunswick, and erected the said manufactory there, the plaintiff cannot recover, and the verdict of the jury should be in favor of the defendant." We would affirm that, if all the facts were embodied in that point. . The other stockholders, outside of Dr. Shultz, could not change the terms of the contract, by locating the manufactory elsewhere, and at the same time bind Dr. Shultz to his subscription, unless Dr. Shultz consented to it, unless he ratified it in some way.] [5] There are other facts given in evidence than those stated in the point, however, which bear upon that question, and which you will have to pass upon.

One reason why we have come to the conclusion which we have announced to you, is based upon the authority cited in Angell & Ames on Corporations, § 538, which is as follows : " Where the directors of a turnpike corporation, with the assent of the corporation, procured an act of the legislature altering the course of a turnpike road, an individual, who, before such alteration, had subscribed for a share and had expressly promised to pay all assessments, was held not to be answerable in an action for the assessments. The court, in giving judgment, said : ' The plaintiffs rely on an express contract, and they are bound to prove it as they allege it. Here, the proof is of an engagement to pay assessments for making a turnpike in a certain specified direction, and of the making a turnpike in a different direction. The defendant may truly say, Non hæc in fœdera veni. He was not bound by the application of the directors to the legislature for the alteration of the course of the road, nor by the consent of the corporation thereto. Much fraud might be put in practice under a contrary decision.' " [The case is analogous to the one in hand, and we will therefore say to you, that if the evidence shows that this defendant subscribed his stock to a nut and bolt manufactory in the borough of Auburn, the letters patent, following the contract en-

Charge of Court below.

tered into by the defendant here, stipulating that the place of business was to be in the borough of Auburn, and the fact not being disputed that the manufactory was not erected in the borough of Auburn, but outside the borough, in the township of West Brunswick, the defendant would not be bound by his subscription, if this was the whole evidence in the case. But the other evidence in the case is also for your consideration.] [6]

A party may waive a legal right which he possesses, and he may violate [?] that right by his actions. [It is claimed here that this defendant by his conduct waived that right and rendered himself liable to this company for the amount of his assessments, although it should appear that he would not have been bound by his contract if he had chosen not to be. There has been considerable evidence presented to you upon that point. That he withdrew from this corporation, from the organization, before the charter was obtained, and that he had a right to withdraw from it at any time before the charter was actually issued, we understand is the position of his counsel. It may be material for you to observe the dates at which the different transactions shown by the evidence took place, and especially that bearing upon the question whether he actually did withdraw his subscription from this organization, and, if he did, whether he did so within the proper time.] [7]

The defendant claims that he withdrew from the contract he entered into by which the works should be located in the borough of Auburn. There is no direct evidence here of his giving notice to the corporation or board of directors that he did withdraw his subscription. There is evidence that he refused to pay the assessments upon the ground of the change of location, and that this was communicated to perhaps two of the board of directors. It is held as a rule that, where a member of a board of directors is authorized to call upon a party in reference to the business of the corporation, what is said to him, any notice given to him, would be notice to the board of directors. It was the business of the corporation on which he went for the purpose of seeing the other party. There is some evidence that the defendant refused to pay his subscription upon the ground that the site had been changed, but the directors all swear, or most of them, that no communication was ever received from the defendant withdrawing his subscription

Charge of Court below.

to the contract which we have read to you, or refusing to be bound by that contract because the works were not located in the borough of Auburn. However, there is some evidence here of his withdrawal. If so, under the very recent decision of our Supreme Court, there is a time, and that is the general rule of law, within which the withdrawal may be made. If the organization had been effected, if the proper steps had been taken in the matter, the defendant was not at liberty to withdraw his subscription, particularly when action had been taken by the company with reference to his subscription, obligations entered into, contracts made, under the belief that he was a subscriber and would pay his stock.

[Now, in the case to which attention has been called here, bearing upon this question of withdrawal, (if you find there was any withdrawal,) the court below, affirmed by the Supreme Court, say the important question in the formation of a corporation of this kind is, when was the association ready to file their articles with the secretary of the commonwealth? Until this time the whole scheme is inchoate, and the subscriber may withdraw. That is a question to be determined by the jury. If the defendant withdrew his name after a notice that was read to the meeting, as testified to, and that was before they were ready to file their papers in the secretary of the commonwealth's office, the plaintiff could not recover, for up to that time he had a right to withdraw his subscription;][8] but if they were ready to file the articles of association, then he could not withdraw, except for fraud, of which there is no evidence in this case we are reading from, or the one you are trying. If he, the defendant, did undertake to withdraw his subscription at all, when was it? . . . . .

The plaintiff asks us to answer the following points:

1. That if the defendant signed the subscription paper given in evidence, the same enured to the benefit of the plaintiff after the act of incorporation, and the plaintiff has a right to maintain this suit to recover the amount unpaid, with interest from and after the several calls made payable.

Answer: It is the general rule, the corporation law, that a preliminary subscription enures to the benefit of the corporation after the corporation is formed, unless, as we said before, the party has withdrawn his subscription in proper time; that

Charge of Court below.

the original subscription made by these parties for the purpose of securing a charter would enure to the benefit of the corporation if the subscription was not withdrawn in the proper time, and he would be bound to pay the amount of his subscription to the corporation, although at the time the corporation was not in active existence.

2. That if the defendant failed to give notice to the company of his intention to withdraw from the same before the fifth day of April, A. D. 1887, when the articles of incorporation were ready to file with the secretary of the commonwealth, his subscription to pay became absolute and binding upon him.

Answer: We do not think we can affirm this, in the very broad terms in which it is put here, because it leaves out of view the action of the stockholders in changing the location without his consent, and his subsequent ratification of it. If the defendant withdrew from this corporation, it would be necessary that that withdrawal should be made before the articles of association were subscribed and sworn to, as we have read to you from the decision of the Supreme Court. If you find there was a withdrawal, that withdrawal would have to take place before the fifth of April, 1887, in order to excuse him from paying his subscription; and he would have a right up to that time to withdraw, whether the works were located in Auburn or not, because the matter was inchoate.[1]

3. That the erection of the nut and bolt works at Auburn was a substantial compliance with the purpose intended by the parties who subscribed to the enterprise; and if the defendant, having notice of the location of the works, failed to give notice to the company of his objection to the site selected for the erection of the works, and permitted the works to proceed toward completion and money to be expended by the company on the faith of his and other subscriptions to the enterprise, he became and is bound to pay his subscription; and the verdict of the jury should be for the plaintiff, with interest from the time the several calls were made payable.

Answer: We decline to affirm this in the language in which it is put. It would not be for the court to say whether it is a substantial compliance or not. We do not think that is the question here. So far as the latter part of this is concerned, we say that the calls would bear interest from the time that

Charge of Court below.

they became due.   The dates are given here of the maturing of the different calls.   One came due on the thirty-first of March, one on the fifteenth of June, another on the first of August, and the last on the fifteenth of September, and they would bear interest from the time they became due.   That is the rule of law, so far as assessments are concerned.[2]

The defendant has submitted the following points to us :

1. That the defendant subscribed for the erection of a nut and bolt manufactory in the borough of Auburn ; and, as a portion of the subscribers changed the place for the erection of the same outside of the borough of Auburn, and in the township of West Brunswick, and erected the said manufactory there, the plaintiff cannot recover, and the verdict of the jury should be in favor of the defendant.

Answer : We have already called your attention to this point in our general charge, and said that, if the evidence extended no further than the contract and the charter of the association, we would affirm this, but there is other evidence in the case for your consideration.[3]

2. That the enterprise, before the procuring of a charter and an organization under it, was simply preliminary and inchoate, and bound none of the parties ; that their subscription was not binding, and any subscriber could withdraw, or decline to be bound, up to the date of the granting of the charter ; that it was not necessary for one of the subscribers to notify his co-subscribers of his intention to withdraw, and his subscription was simply preliminary, there being no corporate body in existence with which he was contracting.

Answer : We could not affirm this, in view of the decision of the Supreme Court, that the right of withdrawal could only extend up to the time that the articles of association were subscribed and sworn to ; that is, before they were ready to file their papers in the secretary of the commonwealth's office, not after that time. . . . .

3. That as the subscription list, offered in evidence, provides that the nut and bolt manufactory shall be erected in the borough of Auburn, and as the evidence is undisputed that no such works have been erected in the borough of Auburn, but in the township of West Brunswick, the plaintiff had no power to levy assessments and collect said subscriptions for the pur-

pose of erecting such nut and bolt manufactory outside the borough of Auburn.

Answer: We think we have substantially answered this point in the general charge. That would be our view of the case, unless the defendant waived the legal ground which he occupied, by his own conduct, by his paying this ten per cent assessment and by agreeing to pay the other assessments on the following Friday. If you believe that evidence, your verdict should be for the plaintiff.[4]

—The jury returned a verdict for the defendant. Judgment having been entered, the plaintiff took this appeal and assigned for error:

1, 2. The answers to plaintiff's points.[1] [2]

3, 4. The answers to defendant's points.[3] [4]

5–8. The parts of the charge embraced in [  ] [5 to 8]

*Mr. G. H. Gerber* (with him *Mr. J. W. Ryon*), for the appellant:

1. The instruction that the defendant might withdraw his subscription at any time before April 5, 1887, was radically erroneous. The subscription, being founded upon a substantial, legal and moral consideration, was binding upon each and every subscriber, and one subscriber could not withdraw, leaving the whole burden to rest upon the shoulders of his colleagues. Such subscriptions have uniformly been held valid and binding, not only in Pennsylvania, but elsewhere: Angell & Ames on Corp., 490; Sagory v. Dubois, 3 Sandf. Ch. 466; Herkimer Mfg. Co. v. Small, 2 Hill 127; Spear v. Crawford, 14 Wend. 20 (28 Am. Dec. 513); United Society v. Eagle Bank, 7 Conn. 456; Kidwelly Canal Co. v. Raby, 2 Price 93; Delma v. Railroad Co., 5 Ala. 786; Everhart v. Railroad Co., 28 Pa. 353; Ryerss v. Presbyterian Cong., 33 Pa. 114; Chambers v. Calhoun, 18 Pa. 13; Caul v. Gibson, 3 Pa. 416; Pittsburgh etc. R. Co. v. Clarke, 29 Pa. 146; Greer v. Railway Co., 96 Pa. 391; Garrett v. Railroad Co., 78 Pa. 465.

2. It is not alleged that there were any advantages that would have accrued to the defendant, or to any other subscriber, by the location of the works within the limits of the borough of Auburn, which they did not enjoy in connection with the location as made; or that there was a single anticipation which

Arguments.

was not realized as fully as if the factory had been built within the borough. The objection to paying the subscription is therefore the most naked technicality. We claim that there was a full, substantial compliance with the terms of the subscription, and that the defendant is not released therefrom by the location of the building. It is not every trifling change in carrying out the arrangements that will absolve a subscriber. The change must be radical; so great and so essential that the party is required to pay money for something that he never contemplated engaging in: Gray v. Navigation Co., 2 W. & S. 156; Irvin v. Turnpike Co., 2 P. & W. 466; Clark v. Navigation Co., 10 W. 364; Everhart v. Railroad Co., 28 Pa. 353; Cross v. Railway Co., 90 Pa. 392.

3. There was not a particle of evidence that the defendant gave notice to anybody, prior to April 5, 1887, that he would not be bound by his subscription, and yet the court submitted to the jury the question whether he had done so. Even if he had a right to withdraw, prior to the time when his name was returned to the governor as a shareholder, he failed to do so, and his subscription became absolute at the time of such return: Irvin v. Turnpike Co., 2 P. & W. 466, overruling McConahy v. Turnpike Road Co., 1 P. & W. 426; Pittsburgh etc. R. Co. v. Biggar, 34 Pa. 455; Bavington v. Railroad Co., 34 Pa. 358; Crossman v. Bridge Co., 26 Pa. 70; Garrett v. Railroad Co., 78 Pa. 465; Bedford R. Co. v. Bowser, 48 Pa. 29. That these decisions apply to corporations other than railroad companies, is established by the decision in Nippenose Mfg. Co. v. Stadon, 68 Pa. 256, though in that case the court overlooked Pittsburgh etc. R. Co. v. Biggar, supra, in which it was held that the condition attached to a subscription was void, and the subscription absolute.

*Mr. S. H. Kaercher* and *Mr. James Ryon*, for the appellee:

1. The right of the defendant to withdraw his subscription at any time before application was made for the charter, is sustained by the decision of this court in Muncy Traction Engine Co. v. DeLa Green, 12 Cent. R. 386. All the cases cited for appellant, relating to subscriptions to the stock of railroad corporations, are based upon the peculiar construction of their own charters, or of the general law governing subscriptions to such enterprises.

Opinion of the Court.

2. In the case of subscriptions at common law, for public or charitable objects, it has uniformly been held that until some act is done and expense incurred, on the faith of the subscription, it is revocable at the will of the subscriber or by his death : Caul v. Gibson, 3 Pa. 416; Edinboro' Academy v. Robinson, 37 Pa. 212. Under § 3, act of April 29, 1874, P. L. 76, and § 1, act of June 7, 1879, P. L. 112, no legal contract or engagement could have been made by the plaintiff prior to May 16, 1887, the date of its charter.

3. To entitle the plaintiff to recover, it must show compliance with the contract between it and the subscriber; and, as it showed that the plant had been erected at a different place from that called for by the contract, the defendant was no longer bound, unless he assented to or ratified the plaintiff's act. Whether he did so, was fairly submitted to the jury.

OPINION, MR. JUSTICE MCCOLLUM :

It is too late to object that there was no evidence that Shultz gave notice to the appellant company before the fifth of April, 1887, of his intention to withdraw from it. The point was not made in the court below, but on the contrary the company requested the court to charge the jury : " That if the defendant failed to give notice to the company of his intention to withdraw from the same before the fifth day of April, A. D. 1887, when the articles of incorporation were ready to file with the secretary of the commonwealth, his subscription to pay became absolute and binding upon him." This point was a plain concession by the company that the time of the notice of an intention to withdraw from it, was material, and that the question whether the notice was given before the fifth of April was for the jury. An unqualified affirmance of the point was refused expressly on the ground that it left out of view the action of the stockholders, in changing the location of the plant without the consent of the appellee; but the learned judge, in answering the point, charged that a withdrawal after the fifth of April would not excuse him from paying his subscription. So far as the request pertained to the submission of the question whether the appellee gave notice before the fifth of April of his intention to withdraw from the company, it was complied with. After this request and the answer there-

Opinion of the Court.

to, the complaint of the appellant that the question was sub-
mitted without evidence, will not be considered.   A party who
solicits and obtains an instruction from the trial judge will not
be permitted to allege here that there was no evidence to jus-
tify it: Fisher v. Farley, 23 Pa. 501.

The learned judge was clearly right in holding that the
appellee might sever his connection with the company and
withdraw his subscription at any time prior to the fifth of April,
1887, that being the date it was ready to file its articles in the
office of the secretary of the commonwealth.   " Where a cor-
poration is formed, or attempted to be formed, under general
statutes, the inchoate proceedings do not ripen into a corpora-
tion, until all the requirements of the statute, even to the filing
of the articles in the office of the secretary of state, are com-
plied with.   Until this is done, a subscription to the articles is
a mere proposition to take the number of shares specified of
the capital stock of the company thereafter to be formed, and
is not a binding promise to pay.   The obligation is inchoate
merely, and can never become of force unless the corporation
goes into effect in the mode pointed out by the statute : "
Thompson's Liability of Stockholders, § 120.   In Muncy Trac-
tion Engine Co. v. DeLa Green, 12 Cent. R. 386,* it was held
that a subscriber to the stock of a proposed corporation may
withdraw his subscription at any time before application for a
charter.   The case cited was determined in this court in 1888,
but the doctrine of it is familiar and has recognition in many
of our preceding decisions: Phipps v. Jones, 20 Pa. 260 ; Edin-
boro' Academy v. Robinson, 37 Pa. 210; Strasburg R. Co. v.
Echternacht, 21 Pa. 220 ; Shober v. Park Ass'n, 68 Pa. 429 ;
Garrett v. Railroad Co., 78 Pa. 465.

The appellee's subscription was " for the purpose of erecting a
nut and bolt manufactory in the borough of Auburn, Pa.," and
the charter of the appellant company provides that its business
shall be transacted in that place.   It appears that the company
has built its manufactory in an adjoining township, and carries
on its business there, and it is conceded that it will not erect
a manufactory in the borough of Auburn, as proposed in the
subscription and charter.   In the face of this showing and con-

---

* Now reported, by direction, post, 269.

cession can the corporation enforce payment of the subscription ? The obvious inducement to the subscription was the establishment of a manufacturing plant in the borough of Auburn, and that was its plainly declared purpose. It would be in direct violation of the terms of his contract, and unconscionable, to compel the subscriber to pay for the erection of a like plant in another locality. The selection of a site within the borough limits was within the power of the corporation under the subscription and charter, but it was not authorized by either to locate its manufactory in an adjoining township, and to require its objecting subscribers to pay for it. A material change in the route of a railway company has been held sufficient to discharge a subscriber: Thompson's Liability of Stockholders, § 188, and cases cited. It is involved in the nature of a subscription to the stock of a company to construct a road from one place to another, that the termini are part of the contract, and if the company procure an act of assembly altering the termini of the road, the subscriptions are no longer binding: Plankroad Co. v. Arndt, 31 Pa. 317 ; Cross v. Railway Co., 90 Pa. 392. So, in our case, when the corporation erected its manufactory in an adjoining township without the consent of the appellee, he had the right to consider the enterprise to which he had bound himself as abandoned and his contract at an end. As he has neither expressly nor impliedly waived this defence, we think he may rely on it as a sufficient answer to this action. The specifications of error are dismissed and

The judgment is affirmed.