## South West Pennsylvania Fair Association, Appellant, v. H. L. Greer.

*Agreement to contribute to a quasi-public enterprise not subscription to capital stock.*

An agreement to contribute to a quasi-public enterprise does not fall within the rules which govern liability for a subscription to the capital stock of a proposed corporation.

An agreement to subscribe to an enterprise entitled " South West Pennsylvania Fair," *held* not to be enforceable as a subscription to capital stock, when it appears that the paper does not express a purpose on the part of the subscribers to proceed to incorporation; when the purpose is not expressed except in the name; when the alleged subscriber took no part in the incorporation; where there is no proof that he took part in the affairs of the corporation and where no one was shown to have signed on the faith of defendant's name.

Argued April 18, 1899.   Appeal, No. 55, April T., 1899, by plaintiff, from judgment of C. P. Westmoreland Co., Nov. T., 1896, No. 6, in favor of defendant on the question of law reserved.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by W. W. PORTER, J.

Appeal from judgment of a justice of the peace.   Before DOTY, P. J.

It appears from the evidence that in the spring or summer of 1895 certain residents of Westmoreland county obtained subscriptions to the following paper:

" We, the undersigned, do hereby subscribe to the capital stock

of the South West Pennsylvania Fair, the number of shares of the par value of Twenty-five ($25.00) Dollars, set opposite our several names, and we do hereby promise and agree to pay for the same as follows, to-wit: The sum of Five ($5.00) Dollars per share on the signing of this agreement; and Five ($5.00) Dollars per share on the first of each and every month thereafter until the same is fully paid. It is understood that no one person shall be allowed to subscribe for or hold more than Four (4) shares of said stock."

The defendant was the fourteenth person to sign the subscription paper and thirteen others signed after him.

On August 21, 1895, application was made to the court of common pleas of Westmoreland county for a charter and was so proceeded in that on October 19, 1895, a decree incorporating plaintiff company was entered by that court. The charter was duly recorded on October 26, 1895, and on that date the company proceeded to exercise its powers. Fairs were held, annual passes furnished to the stockholders, among them to the defendant. He was appointed one of the auditors of the company but testified that he had no recollection of ever having used the annual passes or acted as auditor. There was no evidence of his having returned the annual passes or that he refused to act as auditor. He did not pay his subscription when demanded by the company, but refused payment thereof. Suit was brought before a justice who rendered a judgment for the plaintiff and from this judgment appeal was taken to the common pleas. The court instructed the jury to find a verdict for the plaintiff for $113.85, subject to the following question of law reserved:

" Whether there is any evidence in the case to be submitted to the jury upon which the plaintiff is entitled to recover, and we reserve that question, and your verdict is subject to the question of law reserved; we likewise reserve the questions of law presented in the propositions on the one side and on the other."

Judgment was entered in favor of defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant on the question of law reserved non obstante veredicto.

*W. A. Griffith,* with him *V. E. Williams* and *A. M. Sloan,* for appellant.—The questions which we apprehend are involved in a proper determination of this case seem to us to be about as follows:

1. Is a subscription on a preliminary paper to the capital stock of a proposed corporation, if afterward incorporated according to law, binding on the subscriber from the time of the signing of said paper?

2. If so, is it revocable by the subscriber?

3. If so, what acts are necessary on the part of the subscriber in order to be relieved from his subscription, and when must such acts be performed by him?

We assert the law to be as follows:

1. A subscription, such as is set forth in the first question, is valid.

2. It is revocable at any time before the corporation has a complete legal existence.

3. But the revocation must be by some positive act of the subscriber desiring to revoke, of which the cosubscribers and representatives of the corporation must have full and complete notice before the corporation has such legal existence: Caley v. Railroad Co., 80 Pa. 363; Boyd v. Railroad Co., 90 Pa. 169; Bedford Railroad Co. v. Bowser, 48 Pa. 29; Pittsburg & Steubenville Railroad v. Biggar, 34 Pa. 455; Bolt Works v. Schultz, 143 Pa. 256; Traction Engine Co. v. De La Green, 143 Pa. 269; Garrett v. Railroad Co., 78 Pa. 465; Phipps v. Jones, 20 Pa. 260.

(1) There was no evidence of withdrawal unless the neglect to pay subscription is such evidence. We do not think that it is. But (2) if it is, such withdrawal could only have been attempted when the neglect had its inception, and that was after the right to withdraw had terminated. It would therefore be inoperative. (3) But in the third place there must be notice of withdrawal communicated in order that it be effectual. There is no evidence of such communication. In order that withdrawal may be effectual, it is necessary, as in the case of other contracts, that notice thereof shall be communicated. An uncommunicated revocation can have no effect whatever: Clark on Corporations, 269.

*David L. Newill,* with him *James S. Beacom,* for appellee.—

"We, the undersigned, do hereby subscribe to the capital stock of the South West Pennsylvania Fair, the number of shares of the par value of Twenty-five ($25.00) Dollars, set opposite our several names, and we do hereby promise and agree to pay for the same as follows, to wit: The sum of Five ($5.00) dollars per share on the signing of this agreement; and Five ($5.00) Dollars per share on the first of each and every month thereafter until the same is fully paid. It is understood that no one person shall be allowed to subscribe for or hold more than four (4) shares of said stock."

The agreement is to take capital stock only; it does not show the character of the association nor does it set forth whether it is to be incorporated or not, nor the amount of the capital stock of the association.

A corporation cannot sustain an action against one who, before it was chartered, with others, signed a paper agreeing to take a certain quantity of its stock and afterwards refused to do so; such a paper signed by the party is not a contract but a mere expression of the subscriber's intention: Strasburg Railroad Co. v. Echternacht, 21 Pa. 220; McClure v. Railway Co., 90 Pa. 269; Hedge & Horn's Appeal, 63 Pa. 273; Railroad Co. v. Seager, 7 Pa. Superior Ct. 268.

The paper shows a mere intention to take capital stock; there was no agreement to hold a fair set out in the subscription list. In the only cases in which a recovery has been permitted by the courts there was a positive promise to pay certain sums of money to accomplish a specified object, as in the Academy of Edinboro v. Robinson, 37 Pa. 210, to build an academy; in Shober v. Lancaster Park Association, 68 Pa. 429, to purchase grounds for an agricultural park; as was well said by the court in Strasburg Railroad Co. v. Echternacht, 21 Pa. 220: "A contract cannot be made by one person alone. It takes two to make a bargain." When the first subscriber signs his name he is unquestionably not liable, for there is no other on the paper. The subscription is but an act or intention of the subscriber and is executory only.

The subscription paper itself shows no intention on the part of the subscribers to incorporate, and there having been no evidence offered on the trial of the case to show that the subscribers intended to become a corporation at the time the paper was signed,

the question of the right of the defendant to withdraw his subscription as we view it does not enter into this case. The defendant would certainly have to in some way become connected with the plaintiff corporation before any liability to pay for any part of the capital stock of the corporation would attach, and no connection with the plaintiff having been shown there was no necessity on his part to withdraw therefrom a subscription he had never made.

OPINION BY WILLIAM W. PORTER, J., May 28, 1899:

A subscription to the capital stock of a proposed corporation, subsequently incorporated according to law, is binding on the subscriber and enforceable by the corporation, where the agreement of subscription is clear and explicit in its terms. Where a corporation is attempted to be formed under general statutes, the proceedings are inchoate until all of the requirements of the statutes are fulfilled. Up to the point of the actual filing of the articles of incorporation a subscription to stock is a proposition, not an enforceable obligation, to take and pay for the number of shares specified, and may be recalled: Auburn Bolt Works v. Shultz, 143 Pa. 256 ; Muncy Traction Co. v. De La Green, 143 Pa. 269; Garrett v. Dillsburg, etc., R. R., 78 Pa. 465.

The difficulty in this case is, however, that it does not involve an inquiry into the right of a subscriber to withdraw but rather an interpretation of the paper writing signed by the defendant and others, upon which the alleged subscription to corporate stock is founded. The paper exhibited does not express a purpose on the part of the subscribers to proceed to incorporation. The mere use of the words " capital stock " in a document so inartificially drawn, may not be strained to evince such an intention. They are words which may also describe the quantum and character of interest to be held in an unincorporated association or even in a partnership : Hedge and Horn's Appeal, 63 Pa. 273. Again the purpose of the enterprise to be entered upon is not expressed save in the statement of the name " the South West Pennsylvania Fair." The carrying forward of such a project does not necessarily involve the creation of a corporation. The amount of the subscription and the time when the several payments on account are to be made both rebut in a measure a construction holding the paper to be a subscription

to the stock of a proposed corporation.   When the application for letters patent was made, the shares claimed to have been subscribed for by the defendant, are made "two" instead of "four," and the face value $50.00 each instead of $25.00 as set forth in the agreement.   In this application the defendant's name appears, but it is not claimed that he signed the paper.

The testimony presented does not help out the writing in creating a liability to the plaintiff company.   No one was shown to have signed on the faith of the defendant's signature.   His testimony discloses no admission that he subscribed to the stock of a proposed corporation.   There is no proof that the defendant ever participated in the affairs of the corporation plaintiff, save that he received, but did not use an annual ticket of admission presumably to a fair conducted by the plaintiff.   This is not sufficient to convert an agreement to contribute to a quasi-public enterprise into a subscription to the capital stock of a corporation.

We are of opinion that no such obligation of the defendant has been shown as warrants a recovery on the part of the plaintiff company.

The judgment is affirmed.