## Pledge of Assets by Building and Loan Associations

SAYLOR, Deputy Attorney General, November 25, 1932.—You have asked to be advised whether, under the provisions of the Act of July 28, 1932, P. L. 11, a building and loan association under your supervision may pledge as collateral for loans made to it by the Reconstruction Finance Corporation, or other Federal agency, bonds, mortgages and shares of stock delivered to it by member-borrowers.

Section two of the Act of 1932 provides that any building and loan association of the Commonwealth ". . . shall have power and authority to borrow money

from the Federal Home Loan Bank, the Reconstruction Finance Corporation, or any other corporation or agency established under the authority of the United States Government, except National banks, upon such terms and rates of interest, not exceeding the legal rate of interest in this Commonwealth, as may be agreed upon, and to assign its bonds and mortgages or other property, including the right to repledge the shares of stock pledged as collateral security without securing the consent of the owner thereto, as security for the repayment of its indebtedness as evidenced by its bond, obligation, or note given for such borrowed money, and such bond, obligation, note or notes may be in such form as is prescribed by the corporation or agency established under the authority of the United States Government, as aforesaid: Provided, however, That no building and loan association shall at any time borrow money from any such corporation or agency, or in any manner now authorized by law in an amount exceeding thirty-five per centum of the withdrawal value of the stock issued by such association."

Nothing could be clearer than the provisions recited. Without question, this act, in terms complete in themselves, and independently of other legislative authority, gives to a building and loan association the right to pledge its assets, consisting of bonds and mortgages given to it, and stock assigned to it, as collateral for loans made to it by any governmental agency of the United States other than a national bank.

However, the question arises whether that right may be exercised with respect to assets which came into possession of an association prior to the approval of the act. Where a member-borrower has contracted with the association before it was given the power to pledge, can he prevent the exercise of such power because of constitutional provisions protecting the obligations of contracts? Is the Act of 1932 unconstitutional as far as bonds and mortgages given and stock assigned prior to July 28, 1932, are concerned?

If a building and loan association enjoyed, previous to July 28, 1932, the right to pledge its assets, the 1932 act did not increase its rights. It merely stated them in connection with the grant of power to borrow money from certain governmental agencies. However, an examination of prior legislation indicates that heretofore no such right existed.

Prior to the 1932 enactment, a building and loan association was closely restricted in power to borrow money. The Act of June 2, 1891, P. L. 174, as amended by the Act of June 25, 1895, P. L. 303, permitted it to make, under certain conditions, temporary loans not exceeding in the aggregate "at any one time twenty-five per centum of the withdrawal value of the stock issued" by the association and to "secure the payment of the same by interest bearing order, note or bond as collateral."

The Act of July 9, 1919, P. L. 808, gave associations the additional right under the same conditions to borrow up to the same limit and to secure the payment of such loans "by pledge of bonds of the United States Government issued for war purposes as collateral."

Neither of these acts affirmatively gave an association the power to pledge any other assets as collateral for loans made to it. In the opinion of November 29, 1905 (Official Opinions of the Attorney General, 1905-1906, page 155), the then commissioner of banking was advised that under the Act of 1891 associations could not pledge mortgages. The grant of power made by the General Assembly in 1919 indicates that it was the legislative understanding and intention that an association could not pledge bonds and mortgages given to it by borrowers and the stock assigned by them, as collateral for loans.

We are then faced with the question whether a building and loan association which did not have, before July 28, 1932, the right to pledge a member's bond, mortgage and shares, now enjoys such right without restriction. Would the exercise of that right impair the obligation of the contract entered into when the association took a member's bond and mortgage and accepted an assignment of his stock in the association?

Admittedly there is a contractual relationship existing between the member-borrower and the association. No statute can impair the obligations of such a contract. This is elementary.

Article one, section ten, of the Federal Constitution provides, inter alia: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . ."

Section one of the Fourteenth Amendment to the Constitution provides in part: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ."

Furthermore, the Pennsylvania Constitution of 1874 safeguards property rights in the same general manner. Article one, section seventeen, provides as follows: "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."

Has the legislature, in authorizing a building and loan association to do something more than it could do before it passed the 1932 act, attempted to do what the State and Federal Constitutions prohibit? Does a building and loan association, in parting with the possession and control of a bond and mortgage given and shares of stock pledged by a borrower, deny to him any of his contract rights?

There is no reason to believe that it does. The terms of the bond and mortgage usually given by the borrower evidence his intention that others than the association named therein may secure title to them. The words "obligee, its successors and assigns," and "mortgagee, its successors and assigns," appear repeatedly in them as in all such documents where the party secured thereby is an individual or corporate entity other than a building and loan association. The commonly used forms of application for loan and stock loan note and assignment refer to the "association, its successors and assigns," and give to all of them right, title and interest in and to the shares of stock as collateral for the obligation evidenced by the note.

In none of these documents is there any phraseology imposing upon the association the duty to retain title and possession thereto. No such restriction is imposed on any other obligee or mortgagee. The inference is clear that the member-borrower has agreed to permit the association to assign his obligation and stock, provided, of course, such action does not impose upon him a liability that would otherwise not exist. The mere lack of power in the association legally to make such assignment, even though permitted by the borrower, does not affect the nature of the contract in such manner that the later grant of the power alters the terms of the contract. The borrower has left open to the association a course of action which it, as far as he is concerned, is free to take when, as and if the legislature gives it authority. Such course of action is ordinarily open to any other obligee, mortgagee or assignee which enjoys the right to reassign or repledge. Whether or not the association secures such right, or acts upon it when secured, is of no consequence to the borrower and has no effect on his rights or obligations.

Consequently, the Act of 1932 does not effect any change in the contractual relationship between borrower and association by granting power to the asso-

ciation. The exercise of the power does not impair any contract entered into before the grant. There is merely a change in the statutory rights of one of the parties to the contract. Only where rights created by a law are themselves contractual and not merely permissive does a change in the law alter the terms of a contract existing before the change: Coombes v. Getz, 285 U. S. 434 (1932).

Furthermore, it cannot be said that the mere legal disability of a contracting party to deal with a contract cannot be removed by subsequent enabling legislation. If the disability is not recognized in the contract and does not enter into the nature of the rights of either party, and if no provision is made respecting such right if the disability be removed, such removal by statute does not impair the obligation of the contract. See Gray v. Monongahela Navigation Co., 2 W. & S. 156 (1841), where, at page 159, Chief Justice Gibson said: ". . . A grant of additional privileges to a corporation, has certainly not been thought an invasion of the contract which exists between it and subscribers to its stock. . . . ." See, also, Cross v. The Peach Bottom Ry. Co., 90 Pa. 392 (1879), where the giving of additional privileges to a corporation was held not to be an invasion of the contract of subscription for its stock.

The Act of May 25, 1878, P. L. 155, as amended by the Act of June 10, 1881, P. L. 107 (No. 118), makes it a misdemeanor for any person, bank, savings fund, building association or any corporation to repledge any securities received for money lent or borrowed during the continuance of the contract of hypothecation of such securities. Its terms are repealed by the self-sustaining and unambiguous provisions of the Act of 1932, as far as the repledging of stock of a building and loan association to a Federal agency is concerned. The Act of 1878 is penal in its nature. No contractual rights under it could have been created; none survive its repeal.

Of course, the repledgee in any case can have, with respect to collateral assigned to it, no higher rights than the building and loan association enjoys. No repledge can adversely affect the rights of the member-borrower. He is entitled to a return of his assigned stock when he has paid the obligation it secures. His right to repay his loan before maturity given him by the Act of April 10, 1879, P. L. 16, as amended by the Act of April 30, 1929, P. L. 901, cannot be denied him.

An association should not repledge any shares of stock assigned to it unless accompanied by the obligation of the member-borrower, nor for an amount in excess of the amount remaining due on such obligation at the time of the assignment. Were it to do otherwise, the right of the member-borrower to a return of his property might be destroyed and the officers of the association might be charged with conversion.

The association should repay promptly to the repledgee any amounts paid by the member-borrower, and when final payment has been made by him, it should secure the return of his collateral. It may seem elementary to state the foregoing and to say that agencies of the United States Government may be expected to be properly advised as to the right of an association to borrow and to pledge. However, it is well to make it clear that an association cannot avail itself of the provisions of the Act of 1932, if by so doing it takes away the rights of a member-borrower.

We believe that the Act of 1932 is a valid and constitutional enactment and that, subject to the limitations it imposes, it gives to building and loan associations the powers it prescribes without adversely affecting the rights of member-borrowers.

Therefore, you are advised that any building and loan association under your supervision may, within the limits prescribed by the Act of July 28, 1932, pledge

with the Reconstruction Finance Corporation, or any other agency established under the authority of the United States Government, except national banks, any bonds and mortgages owned by it, or shares of its stock pledged to it, whether the contracts with the member-borrowers giving it title to such assets were entered into prior to or after July 28, 1932, without the necessity of consent by the member-borrowers concerned.

From C. P. Addams, Harrisburg, Pa.